E-FILED on   9/17/2007

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LOUIS L. RUBALCAVA,<br><br>        Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security<br><br>        Defendant. | No. C-05-02331 RMW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS<br><br>**[Re Docket Nos. 13, 14]** |

    Plaintiff Louis Rubalcava ("Rubalcava") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of the Commissioner's decision denying his claim for disability insurance benefits under the Social Security Act.  Administrative Transcript ("Tr.") 105.  Plaintiff and defendant filed cross motions for summary judgment.  Plaintiff alleges that the Administrative Law Judge's ("ALJ") determination of the onset date for plaintiff's disability is unsupported by substantial evidence and was reached by improper application of law.  The ALJ determined that the onset date of disability was October 19, 2000.  Plaintiff claims he became disabled September 27, 1997, when he stopped working.  In accordance with this court's procedures for review of social security actions, the parties' motions have been submitted without oral argument.  The court has considered the moving and responding papers and the record filed in this case.  For the reasons set forth below, the court

GRANTS plaintiff's motion for summary judgment and REMANDS the case for an award of benefits with a disability onset date of September 27, 1997. The Commissioner's cross-motion for summary judgment is denied.

## I. BACKGROUND

### A. Procedural History

On July 8, 1999 plaintiff filed for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act based on disability. Tr. 105. His application was denied initially and on reconsideration. Tr. 95, 100. Plaintiff then filed a request for a hearing before an ALJ on December 28, 1999. Tr. 104. In a November 14, 2000 decision, ALJ 1 found that plaintiff was not disabled because he had the residual functional capacity ("RFC") to perform a significant range of sedentary work. Tr. 198. Plaintiff appealed, and the Appeals Council remanded the case directing the ALJ to consider a consultative vocational report submitted post-hearing. Tr. 200, 207.

On February 28, 2003, following a second hearing, ALJ 2 denied plaintiff's claim, holding that plaintiff's foot pain constituted a "non-severe" impairment under the agency's rules. Tr. 234. Plaintiff again appealed, and the Appeals Council again remanded due to inadequate evaluation of medical evidence. Tr. 238. The Appeals Council ordered the ALJ to obtain evidence from a medical expert on remand "to clarify the nature and severity" of the plaintiff's impairments. Tr. 239. The Appeals Council also directed the ALJ to (1) allow the claimant to present further medical evidence and testimony, (2) to take expert testimony from a medical doctor, (3) to address all relevant medical opinion evidence and assign weight to it and employ an appropriate rationale regarding the evidence, (4) to assess the claimant's subjective complaints in accordance with SSR-96-7p, and (5) to take testimony from a vocational expert if warranted by the expanded record. Tr. 21.

Prior to the hearing on remand, ALJ 3 informed plaintiff and his counsel that he was entitled to have a medical advisor present. Plaintiff consented to proceed without one. Tr. 77. On December 18, 2003, in a partially favorable decision, ALJ 3 found that the plaintiff was disabled beginning October 19, 2000. Tr. 26. ALJ 3 concluded that between September 27, 1997 and October 19, 2000 the plaintiff retained a RFC for medium exertional work which was sufficient to

1  perform his past relevant work and, accordingly, found he was not disabled during that period of
2  time. *Id.* On April 26, 2005 the Appeals Council denied plaintiff's request for review, making the
3  decision of the ALJ the final decision of the Commissioner. Tr. 8. This appeal followed.

   **B.    Plaintiff's Vocational and Medical History**

Plaintiff was born on October 18, 1937, making him nearly 60 years old at the date of the alleged onset of disability (September 27, 1997). Tr. 105. He received a high school diploma in 1956, and then worked for Sears in different capacities for 42 years. Tr. 124, 126. From 1985 to 1987 he worked as a furniture refinisher, from 1987 to 1990 he worked as a shipping clerk, and from 1995 to 1997 he worked as an appliance salesman. *Id.* Plaintiff testified that both the shipping clerk and salesman positions required standing for much of the day. Tr. 60-61. According to the vocational expert who testified at plaintiff's hearing, the shipping clerk position is classified as semi-skilled medium exertional work and the position of appliance salesman is considered semi-skilled light exertional work. Tr. 90. The vocational expert further testified that none of the skills from plaintiff's shipping clerk or salesman positions are transferable. Tr. 91.

In February 1997, the plaintiff began reporting pain and swelling in his left foot to his physician, George Shmagranoff, M.D. Tr. 160. The plaintiff again complained of left foot pain to Dr. Shmagranoff in June and August 1997. *Id.* Dr. Shmagranoff recommended use of Aspercreme and Advil. *Id.*

On September 27, 1997 the plaintiff left his employment with Sears. Tr. 119. He maintains that the foot pain forced him to retire. Tr. 59, 83, 87, 105, 187. His foot pain continued after he left Sears. On November 7, 1998 he saw Michael Amirkiai, M.D., a podiatrist. Tr. 186. Dr. Amirkiai diagnosed plaintiff with metatarsalgia[1] and found evidence of a distally displaced foot pad on the left foot. *Id.* He recommended a spenco shoe insert. *Id.*

---

[1]    Metatarsalgia is "a cramping burning pain below and between the metatarsal bones where they join the toe bones." *Merriam Webster Medical Dictionary* (2002 ed.). "Metatarsal" means "of, relating to, or being the part of the human foot." *Id.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS—No. C-05-02331 RMW
ESD/SPT                                        3

In April 1999 Dr. Shmagranoff diagnosed plaintiff with a dropped transverse arch and thin left foot pad. Tr. 157. It does not appear that he prescribed or recommended any additional medications or measures at this time. *Id.*

In September 1999 plaintiff was examined by Ralph H. Wood, M.D., a consulting physician for the Disability Determination Service ("DDS"). Tr. 163. Dr. Wood's examination confirmed that plaintiff's left foot pain was secondary to some loss of the fat pad in his left foot. Tr. 164. According to Dr. Wood's report, plaintiff indicated that he could walk several miles but has difficulty standing for a prolonged period of time. Tr. 163. Upon examining plaintiff, Dr. Wood noted:

> There are good pedal pulses present bilaterally. There is no muscle atrophy or pedal edema. The deep tendon reflexes are present and equal bilaterally. The straight leg raising sign can be carried out to 75 degrees bilaterally in the supine and seated position. When the patient stands and attempts to touch the floor with the tips of the fingers, he can do this with ease. There is a full range of motion of all four extremities.

Tr. 164. Dr. Wood also observed that plaintiff's gait was within normal limits. In addition, he noted that the pain in plaintiff's left foot was secondary to some loss of fat pad in the foot and was being treated with a left "sfinko insert" in his shoe. *Id.* Based on his examination of plaintiff, Dr. Wood concluded that (1) plaintiff was not using any ambulatory assistive device and none was medically needed, (2) there were no limitations in sitting, (3) plaintiff could easily walk several blocks without difficulty, (4) plaintiff could stand for 30 to 45 minutes without a break, (5) plaintiff could easily lift, push or pull up to 50 pounds, and (6) there were no limitations in hand movements or fine finger movements. *Id.*

On October 19, 1999 S. Battis, M.D.,[2] another consulting physician for the DDS, reviewed plaintiff's files and completed a Physical Residual Functional Capacity Assessment of plaintiff for purposes of determining disability. Tr. 166-173. Dr. Battis determined that plaintiff could stand and/or walk with normal breaks for about 6 hours in an 8-hour work day. Tr. 167. Plaintiff could sit for about 6 hours with normal breaks in an 8-hour work day, and had no limitations in pushing or pulling, including operation of hand or foot controls. *Id.* Further, plaintiff could occasionally lift

---

[2]  It is unclear what Dr. Battis's full name is from the record.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS—No. C-05-02331 RMW
ESD/SPT                                            4

1  and carry up to fifty pounds and frequently lift and carry up to twenty-five pounds. *Id.* Dr. Battis
2  indicated that plaintiff had no postural, manipulative, visual, communicative, or environmental
3  limitations. Tr. 168-170. In conclusion, Dr. Battis noted that his findings of plaintiff's limitations
4  and restrictions did not differ significantly from those of any other treating and examining sources in
5  the file examined by him. Tr. 172.

6        On October 19, 2000 Leonard Greenwald, M.D., a podiatrist, examined plaintiff on a
7  consultative basis. Tr. 187. According to Dr. Greenwald's report, plaintiff complained of pain and
8  swelling on his left forefoot upon prolonged standing of no more than two hours. *Id.* Further, after
9  resting he was unable to resume standing for the same or similar period. *Id.* Plaintiff did not
10 indicate that he was taking any medication for his foot pain and swelling. *Id.* Dr. Greenwald's
11 examination revealed loss of the plantar[3] fat pad on the left forefoot area underlying the metatarsal
12 heads. He also noted a *pes planus*[4] deformity bilaterally which caused increased motion of the
13 forefoot area that has a very thin fat pad. *Id.* X-rays of the left foot did not indicate any osseous[5]
14 deformities. *Id.* Dr. Greenwald concluded that his findings corroborated plaintiff's subjective
15 limitations, including that plaintiff was not able to perform any duties that would require standing
16 for more than an hour in duration on a consistent basis during an eight hour work day. Tr. 188. He
17 noted that on plaintiff's best days, he probably could stand for a maximum of two hours at a time, but
18 that even with extended periods of rest, plaintiff would not be capable of alternating positions
19 between sitting and standing on a regular, sustained basis. *Id.* He agreed with Dr. Wood's
20 assessment that plaintiff could stand for 30 to 45 minutes at a time. *Id.*

21       On December 17, 2002 plaintiff was seen by Timothy Lee, M.D., for a physical examination.
22 Tr. 216. According to Dr. Lee's patient progress notes, plaintiff complained of foot pain when he

---

[3]   "Plantar" refers to the sole of the foot. *Merriam Webster Medical Dictionary* (2002 ed.).

[4]   "*Pes Planus*" refers to a condition in which the arch of the foot collapses. It is also known as flat feet. Wikipedia Online Encyclopedia, *available at* http://en.wikipedia.org.

[5]   "Osseous" means "of, relating to, or composed of bone." *Merriam Webster Medical Dictionary* (2002 ed.).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS—No. C-05-02331 RMW
ESD/SPT                                             5

stood for a long time. *Id.* Dr. Lee referred plaintiff to for examination by a podiatrist. Tr. 217.

On January 21, 2003 Louis Caputo, D.P.M., a podiatrist, examined plaintiff. Tr. 214. He diagnosed plaintiff with moderate flexible long standing *pes valgus*.[6] He also saw evidence of Morton's neuroma[7] in the third interspace of the left. *Id.* Extensor and flexor tendons were intact. *Id.* He also found atrophic plantar fat padding with slight anterior displacement in the left foot which he concluded had resulted in persistent intrinsic metatarsalgia. *Id.* However, there were no discrete focal calluses in the plantar surface of the foot. *Id.* X-rays showed some degenerative changes at the ankle and first MT[8] joint. *Id.* Following his examination, Dr. Caputo recommended that plaintiff (1) use the soft orthotics prescribed by the prior podiatrists (and which plaintiff was not wearing that day), (2) avoid barefoot behavior, and (3) wear sensible shoes which provide good arch support and soft padding in the forefoot. Dr. Caputo further recommended continuing with conservative care, with consideration of injection therapy for the noted neuroma if the symptoms persist. *Id.*

Plaintiff testified that he had to use a chair while working because of the severe pain, but his manager did not think the chair was appropriate on the sales floor and removed it. Tr. 58-59. Without the chair, plaintiff claims he "was unable to complete the tasks required of [his] position," including standing for an eight-hour work day. Tr. 119. Plaintiff testified that "on [his] best day" he would be able to stand for two hours at a maximum. Tr. 83. Usually after 45 minutes of walking he started experiencing a lot of pain; the shoe inserts helped, "but not much." Tr. 85. He also testified that he has no problems sitting or using his hands and arms to lift things, but would have problems carrying things given the added weight on his foot. Tr. 62-63.

## II. LEGAL STANDARDS

### A. Statutory and Regulatory Framework

---

[6] A valgus deformity is a term for the outward angulation of the distal segment of a bone or joint.

[7] "Morton's neuroma" refers to "a form of metatarsalgia involving compression of a branch of the plantar nerve." *Merriam Webster Medical Dictionary* (2002 ed.). A neuroma is "a tumor or mass growing from a nerve and usually consisting of nerve fibers." *Id.*

[8] It appears "MT" stands for "metatarsal."

To qualify for Disability Insurance benefits under Title II of the Social Security Act, the claimant must establish that he has a disability. 42 U.S.C. § 423(d)(1)(A). The impairment causing disability must be of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). The burden of establishing disability is initially on the claimant, who must prove that he is unable to return to his former type of work. *Villa v. Heckler*, 797 F.2d 794, 797-98 (9th Cir. 1986). Once the claimant establishes disability, the burden shifts to the Secretary to identify other jobs that the claimant is capable of performing. *Id.* at 797. "[T]he critical date is the date of onset of disability, not the date of diagnosis." *Swanson v. Sec'y of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir.1985).

**B.     Scope of Review**

Under the Social Security Act section 405(g), a district court reviewing the Commissioner's decision on an application for benefits may affirm, reverse, or remand. *See Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451 (9th Cir. 1993)). The district court's scope of review is limited. This court will not disturb the Commissioner's denial of disability benefits unless the Commissioner's findings are not supported by substantial evidence or the Commissioner failed to apply the proper legal standard. 42 U.S.C. §405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Evidence is substantial if it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Charter*, 108 F.3d 978, 980 (9th Cir. 1997). To determine whether substantial evidence supports the Commissioner's findings, this court must review the administrative record as a whole, weighing evidence that both bolsters and detracts from the Commissioner's conclusion. *Tacket v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where the evidence is susceptible to more than one rational interpretation, this court must adopt the decision of the ALJ. *Sandgathe*, 108 F.3d at 980. "However, even though the findings be supported by substantial evidence, the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (internal quotations and citations omitted).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS—No. C-05-02331 RMW
ESD/SPT                                                            7

# III. ANALYSIS

Plaintiff claims the ALJ erred in: (1) not properly considering the factors set forth in Social Security Ruling (SSR) 83-20; (2) failing to render a credibility finding as to plaintiff's testimony as required; and (3) making an inference about the onset date without the assistance of a medical advisor.

### A.   Social Security Ruling 83-20

The ALJ determined that plaintiff is disabled within the meaning of the Social Security Act as of October 19, 2000. Tr. 26. Plaintiff argues that he became disabled September 27, 1997, when he stopped working, and that the ALJ erred in not properly considering the factors set forth in SSR 83-20. SSR 83-20 provides guidelines for determining the onset date of a disability of non-traumatic origin. SSR 83-20 at 2. The onset date is the first day an individual is disabled as defined by the Social Security Act. *Id.* at 1-2. Factors relevant to determination of onset date include plaintiff's allegations, work history, and the medical evidence concerning the impairment severity. *Id.* These factors are often evaluated together; however, a plaintiff's allegations of the onset date is significant in determining the onset date "only if it is consistent with the severity of the condition(s) shown by the medical evidence. *Id.* at 2. In evaluating these factors, the court considers plaintiff's alleged onset date, pertinent work activity by the plaintiff before and after the alleged onset date, and reports of medical examinations and treatment during the relevant time. *Id.*

Here, plaintiff's alleged onset date coincides with the date he ceased all work activity: September 27, 1997. As to the medical evidence, the ALJ first noted that the medical treatment record dealing with the alleged source of disability—the foot pains—is sparse. Tr. 23. The ALJ noted that on September 29, 1999, Dr. Wood concluded that plaintiff had pain in the left foot and some loss of foot pad, (among other conditions not related to the alleged disability in this case), that plaintiff's podiatrist was treating the problem with arch support in the left shoe, and that plaintiff did not need a cane for walking. Further, Dr. Wood concluded that plaintiff had the RFC to (1) lift and carry up to 50 pounds, (2) easily walk for several blocks, and (3) stand for 30 to 40 minutes. Tr. 24. The ALJ also noted that although plaintiff sought treatment for various medical conditions,

1 including his foot pain, there are a number of doctor visits in which he did not complain of foot pain.
2 Tr. 23.

3   The ALJ noted that Dr. Greenwald diagnosed plaintiff with "considerable loss of plantar fat
4 pad on the left forefoot area underlying the metatarsal heads" and *pes planus* deformity bilaterally on
5 October 19, 2000. Tr. 24. Following his diagnosis, Dr. Greenwald opined that plaintiff could
6 perform essentially sedentary work. The ALJ also states that he gave consideration to the reports of
7 the state agency medical consultants as well as to other treating, examining, and non-examining
8 medical sources. On this medical evidence, the ALJ determined that plaintiff had the capacity to
9 perform medium exertional work prior to October 19, 2000 and, beginning October 19, 2000,
10 plaintiff's RFC is for sedentary exertional work. Thus, the ALJ concluded, plaintiff's onset date of
11 disability was October 19, 2000.

12   Plaintiff argues that the ALJ's decision fails to give due consideration to SSR 83-20's
13 requirement that the onset date be based on medical evidence. "The medical evidence serves as the
14 primary element in the onset determination. Reports from all medical sources (e.g., physicians,
15 hospitals, and government agencies) which bear upon the onset date should be obtained to assist in
16 determining when the impairment(s) became disabling." SSR 83-20 at 2. A decision of the onset
17 date must have "a legitimate medical basis." *Id.* at 3. When precise evidence is not available, the
18 ALJ "should call on the services of a medical advisor when onset must be inferred." *Id.* Ultimately,
19 "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence
20 that the impairment was sufficiently severe to prevent the individual from engaging in [substantial
21 gainful activity] (or gainful activity) for a continuous period of at least 12 months or result in death."
22 *Id.* at 4. After reviewing the ALJ's findings and conclusions in light of the record, the court
23 concludes that the ALJ's determination of the onset date of plaintiff's disability is inconsistent with
24 the evidence.

25   The ALJ concluded that for the period from plaintiff's alleged onset date of September 27,
26 1997 through October 18, 2000, plaintiff retained the RFC to perform the full range of medium
27 exertional work and, therefore, retained the RFC to perform his past relevant work. Tr. 26. The
28 ALJ's conclusion that plaintiff was able to perform the full range of medium work appears to be

premised primarily upon Dr. Wood's medical report. Specifically, as the ALJ points out, plaintiff saw Dr. Wood on September 29, 1999. At that time, based on his diagnosis, Dr. Wood opined that plaintiff retained the RFC to (1) lift and carry up to 50 pounds, (2) easily walk for several blocks, and (3) stand for 30 to 40 minutes. However, under the regulations, medium work "requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." SSR 83-10 at 6. Further, "in most medium jobs, being on one's feet for most of the workday is critical." *Id.* at 7. Dr. Wood's report, upon which the ALJ relies, specifically indicates that plaintiff could only stand for 30 to 40 minutes. Although the ALJ had a vocational expert testify at the hearing, no testimony was developed to indicate what medium work, if any, plaintiff could perform. Based on the record, it cannot be reasonably concluded that plaintiff could perform his past jobs, which undisputedly required substantial standing. Moreover, plaintiff testified that while he has no problems using his arms to lift, he is unable to carry weight because of the added pressure on his foot. Even if plaintiff could meet the lifting and walking requirements within the medium work category, the limitation on his ability to stand precludes him from being on his feet for most of the workday. Because being on his feet for most of the workday is critical for "medium work," plaintiff's exertional limitations preclude his being able to perform such work.

      The ALJ relied almost exclusively on Dr. Greenwald's October 19, 2000 report to conclude that the onset date was October 19, 2000. The ALJ noted that beginning October 19, 2000 there was evidence that plaintiff suffered from additional limitations that precluded him from performing the full range of medium work. This finding, combined with plaintiff's age, education, and past work experience, resulted in a conclusion that plaintiff was disabled starting October 19, 2000. However, Dr. Greenwald indicated in his report that his findings were consistent with those of Dr. Wood. Dr. Greenwald diagnosed plaintiff with loss of the plantar pad on the left forefoot and a very thin fat pad on the left forefoot area. He concluded that his findings were consistent with plaintiff's complaint of pain and swelling after prolonged standing of no more than two hours and the inability to resume standing for the same or similar period after resting. Therefore, he concluded that plaintiff could stand a maximum of two hours on his best days, that plaintiff was not capable of alternating between

sitting and standing on a regular basis even with extended periods of rest. Thus, Dr. Greenwald's report supports a finding that the onset date occurred prior to the date of his own examination.

Similarly, the exertional limitations in Dr. Greenwald's report are consistent with other earlier medical reports. Specifically, although not addressed by the ALJ, medical reports from November 1998 and April 1999 offer diagnoses consistent with those made by Dr. Wood. Dr. Amirkiai diagnosed plaintiff with metatarsalgia and a distally displaced foot pad on the left foot. Dr. Shmagranoff diagnosed plaintiff with a dropped transverse arch and thin left foot pad. Although these reports do not provide an RFC assessment, they are consistent Dr. Wood's findings that plaintiff suffered from loss of the foot pad in his left foot, which led to pain when standing. Likewise, Dr. Battis's consultative report indicated that his findings of plaintiff's limitations do not differ significantly from those treating and examining sources in the file prior to his consultation on October 19, 1999. The consistent diagnoses through this time period suggest that plaintiff had a condition that did not worsen over time; rather, it appears plaintiff suffered from the same condition in 2000 as he did at the time he was examined earlier. Therefore, an earlier onset date is consistent with the medical evidence.

### B. Plaintiff's Allegations

Plaintiff also argues that the ALJ erred because although he found plaintiff's subjective allegations to be generally credible, he did not accord any weight to plaintiff's own testimony or statements. The court agrees. *See* SSR 96-7p at 2 (It is not sufficient "for the adjudicator to make a single, conclusory statement that . . . 'the allegations are (or are not) credible.'"). Specifically, plaintiff has consistently complained of the same pain and the same limitations on being able to stand to each of his treating and examining physicians. Plaintiff also testified that he had to retire from his job of 42 years because he was not able to sustain the prolonged standing required of him and his employer refused to allow him to sit while on duty. He alleges that the onset date of his disability is September 27, 1997, the date he was forced to retire. He testified that since he left work he has not sought other work, he avoids standing and walking, and the foot pain has persisted. The ALJ appears to have not given any weight to these statements by plaintiff, and neither has he explained why any of these statements should not be accorded any weight. In concluding that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS—No. C-05-02331 RMW
ESD/SPT                                            11

plaintiff's subjective allegations were generally credible, the ALJ essentially agreed that there was no evidence of malingering or inconsistent testimony by plaintiff. The ALJ specifically found plaintiff's testimony to be "consistent with the medical treatment record." Tr. 24. Nevertheless, he rejected plaintiff's allegation that he was forced to retire due to the pain in his foot and concluded, without pointing to any evidence, that plaintiff retired from "longevity." Although plaintiff's statements regarding pain or other symptoms will not alone establish that he is disabled, *see* 20 C.F.R § 404.1529(a), § 404.1529(c)(2); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc), the date plaintiff alleges the disability began should be used if it is consistent with all the evidence available. SSR 83-20 at 3. Further, the plaintiff's last day of work "is frequently of great significance in selecting the proper onset date." SSR 83-20 at 2. The court finds that the medical evidence in the record is consistent with plaintiff's allegations of a September 27, 1997 onset date and that the ALJ's onset date of October 19, 2000 is inconsistent with the record.

### C.   Use of a Medical Advisor

Plaintiff also argues that the ALJ should have used a medical advisor to determine the onset date. Notably, the Appeals Council so directed when the case was remanded the second time. However, it appears from the transcript that no medical advisor was present at the hearing and, upon given the choice of continuing the hearing in order to obtain a medical advisor or proceeding without one, plaintiff's counsel agreed to proceed without a medical advisor. Tr. 77. Thus, plaintiff has waived any argument that the ALJ should have called upon the services of a medical advisor.

### D.   Conclusion

The court concludes that the medical evidence and record do not support a finding that plaintiff was able to perform the full range of medium work for the period from September 27, 1997 through October 18, 2000. Because plaintiff could not perform medium work during that period, he could, at most, perform light or sedentary work. Moreover, the medical and other evidence of plaintiff's impairment prior to October 19, 2000 is consistent with Dr. Greenwald's medical report, which the ALJ found to support a RFC for sedentary work. Based on plaintiff's age, education, and past relevant work, he would be considered disabled under the Medical-Vocational Guidelines for individuals limited to light or sedentary work. Under 20 C.F.R. Pt. 404, Subpt. P, App. 2 , a

claimant of advanced age, with at least a high school education, previous work of skilled or semi-skilled level, and past skills which are not transferable is disabled if limited only to light or sedentary work.[9]

Where the ALJ has failed to provide legally sufficient reasoning for his determination, "the decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Although "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation," *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam), remand for an immediate award of benefits may be appropriate under certain circumstances. *See Harman v. Apfel*, 211 F.3d 1172 (9th Cir. 2002). Specifically, the court should "remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citation omitted).

As discussed above, the ALJ failed to provide legally sufficient reasons for not crediting plaintiff's statements and testimony regarding his work history, last day of work, and onset date. As a result, the court credits the evidence as true. *See id.* at 594 (citing *Harman*, 211 F.3d at 1179). The ALJ also did not properly credit the medical evidence prior to Dr. Greenwald's October 19, 2000 report in concluding that the record supports a finding that plaintiff retained the RFC to perform the full range of medium work between September 27, 1997 and October 19, 2000. Based on the record, the ALJ would be required to find that the plaintiff was disabled as early as September 27, 1997. Plaintiff's statement that his foot problems became disabling on September 27, 1997 is consistent with the medical evidence showing that his foot problems date back to February 1997. Tr. 119, 160. There is nothing in the administrative record to contradict plaintiff's subjective allegations, which the ALJ had indicated are consistent with plaintiff's medical records. These

---

[9] Here, it is undisputed that plaintiff is of advanced age and has performed semi-skilled work in the past. The vocational expert testified that plaintiff had no transferable skills from his previous work.

statements are also supported by plaintiff's work history, his testimony regarding his work duties, and his testimony of his daily activities since leaving work. As discussed above, the date plaintiff alleges the disability began should be used if it is consistent with all the evidence available. SSR 83-20 at 3. Thus, it does not appear that further proceedings would add anything useful to the record. *See Benecke*, 397 F.3d at 593. Notably, only the past period from September 27, 1997 to October 19, 2000 is at issue here. There are no additional medical records available covering this period that are not already part of the record. *See* Tr. 70.

## IV. ORDER

For the foregoing reasons, the court GRANTS plaintiff's motion for summary judgment and REMANDS the case for an award of benefits with a disability onset date of September 27, 1997. The Commissioner's cross-motion for summary judgment is denied.

DATED: 9/17/2007

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

Harvey Sackett         hps@hpspc.com

**Counsel for Defendants:**

Sara Winslow           sara.winslow@usdoj.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     9/17/2007                              TSF
                                          **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS—No. C-05-02331 RMW
ESD/SPT                                       15